UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Drew Lathon,                          Civil No. 16-4029 (FLN)

            Plaintiff,

v.                                  **ORDER**

Nancy Berryhill,
Acting Commissioner of Social Security,

            Defendant.

---

Ann Motl, for Plaintiff.[1]
Ann Bildtsen, Assistant United States Attorney, for Defendant.

---

Plaintiff Drew Lathon seeks judicial review of the final decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA"), who denied his application for disability insurance benefits under Title XVI of the Social Security Act. This Court has jurisdiction over Plaintiff's claim pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), 28 U.S.C. § 636(c), and Rule 73 of the Federal Rules of Civil Procedure. The parties have submitted cross motions for summary judgement. *See* ECF Nos. 33 and 38. For the reasons set forth below, the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED WITH PREJUDICE**.

**I. INTRODUCTION**

On December 2, 2013, Lathon filed an application for supplemental security income ("SSI"). Administrative Record ("AR") 29, 69. Lathon's initial alleged disability onset date was

---

[1]      This Court would like to thank Plaintiff's Counsel and the Federal Bar Association *Pro se* Project for assisting Plaintiff in this matter.

1

April 1, 1992.[2] AR 29, 171. Lathon later amended his disability onset date to September 25, 2014. AR 69. Lathon's application for SSI was denied initially on February 28, 2014, and upon reconsideration on October 20, 2014. AR 29, 98, 113. On September 25, 2015, an administrative hearing was held before Administrative Law Judge ("ALJ") Jeffrey Hart. AR 29. On September 28, 2016, the SSA Appeals Council denied Lathon's request for review, rendering the ALJ's decision final for purposes of judicial review. AR 3–8; *see* 20 C.F.R. § 404.981. On November 30, 2016, Lathon commenced this civil action, seeking an award of benefits, or alternatively, reversal and remand for further proceedings. ECF No. 1 at 2.

## II. STATEMENT OF FACTS

### A.   Background

Lathon was born on May 14, 1981, and was thirty-three years old on the amended disability onset date, which is defined as a younger SSI claimant. AR 171; *see* 20 C.F.R. § 416.963. Lathon suffers from several severe impairments: anxiety disorder, asthma, diabetes, and schizoaffective/affective disorder. AR 31; *see* 20 § C.F.R. 416.920(c).

### B.   Medical Evidence

On April 21, 2014, Lathon presented to Dr. Carlos Figari, his primary care physician, for diabetes treatment. AR 47. At this appointment, Lathon reported being depressed and easily teary. *Id.* In addition, Lathon stated that his depression had been recently exacerbated because he had witnessed the murder of a family friend. *Id.* Dr. Figari did not prescribe any medication for

---

2   There appears to be an inconsistency in the administrative record insofar as Lathon reports an initial disability onset date of April 1, 1992, but states that he was not disabled "prior to age 22." AR 171. Lathon would have been ten-years old on April 1, 1992. *See id.*

Lathon's depression; instead he recommended follow-up appointments to make sure that he would be "safe." *Id.*

On May 1, 2014, Lathon was assessed by Licensed Social Worker (hereinafter "LicSW") Elizabeth Shook Peterson. AR 50–51. Ms. Peterson's notes described Lathon as sitting slumped forward, looking into his lap or in his hands, and speaking in a soft, monotonous voice. AR 50. Lathon told Ms. Peterson that he often heard voices and was afraid to sleep due to the "things that come out of the closet at night." *Id.*

On October 1, 2014, Lathon attended a follow-up appointment with Dr. Figari regarding his ongoing diabetes and asthma treatments. AR 53. Dr. Figari's notes indicate that Lathon's mental health was concerning. *Id.* Lathon also reported hearing voices that told him to do bad things. *Id.*

On October 6, 2014, Lathon presented to Dr. Donald Wiger for a psychological consultation. AR 386–90. Dr. Wiger performed psychometric testing. *Id.* Dr. Wiger noted that Lathon had slow movements and struggled to make eye contact. AR 387. Lathon stated that he often felt anxious in large crowds, had attempted suicide, and heard voices. AR 387–88. Dr. Wiger diagnosed Lathon with psychotic disorder, history of post-traumatic stress disorder ("PTSD"), panic disorder, and major depressive order. AR 388.

On December 15, 2014, Lathon visited LicSW Kathleen Sapp, who completed a diagnostic assessment. AR 56. Lathon was not taking psychotropic medication at the time of his appointment. AR 58. Lathon reported to Ms. Sapp that he suffered from long-term depression and was prone to hearing things. AR 56. Additionally, Lathon recounted his friend's murder, stating that he had also seen other people shot and killed. *Id.* Ms. Sapp noted that Lathon reported and exhibited symptoms of depression, anhedonia, insomnia, psychomotor retardation,

fatigue, feelings of worthlessness/guilt, difficulty concentrating, impaired memory, recurrent thoughts of death, suicidal thoughts with specific plans, paranoid ideation, auditory hallucinations, disorganized speech, and disorganized behavior. AR 56–58. Ms. Sapp recommended a psychiatric consultation and individual therapy for Lathon, and provided him with information for psychiatric emergency use, and discussed his unwillingness to use insulin prescribed by his primary care physician. AR 63.

On December 31, 2014, Lathon was examined Dr. Ngozi Wamuo. *Id.* Dr. Wamuo noted that Lathon exhibited depressive and anxiety symptoms, as well as psychotic symptoms of trauma-related hallucinations, and diagnosed Lathon with depression and PTSD. *Id.*; *see also* AR 462. At a February 27, 2015, appointment with Dr. Wamuo, Lathon reported improvement while taking his depression medications, but continued experiencing nightmares and dissociative episodes. AR 464. Lathon's subjective level of depression was listed as severe. AR 465.

At a May 5, 2015, follow-up appointment with Dr. Wamuo, Lathon reported that he had been unable to obtain his mental health medication due to a lack of insurance and financial resources, and that his depression, anxiety, and PTSD were worsening. AR 466–68. On April 13, 2015, on a Hennepin County Human Services Request for Medical Opinion, Dr. Wamuo diagnosed Lathon with major depression and PTSD, and stated that Lathon would not be able to perform any employment in the foreseeable future. AR 473.

On June 18, 2015, Lathon returned to Dr. Wamuo and reported some symptom improvement. AR 469. Lathon reported that his auditory hallucinations had subsided, but the visual hallucinations remained. *Id.*

C.     **Therapy Records Produced after the September 25, 2015, Hearing**

At the request of the ALJ, Lathon produced medical records after the September 25, 2015, hearing. On July 1, 2015, Lathon visited Ms. Sapp for individual therapy. AR 475. Lathon reported he had been using his medications when they were available to him through insurance, that his sleep had improved, but he still continued to experience visual and auditory hallucinations. *Id.* On July 13, 2015, and July 22, 2015, Lathon visited Ms. Sapp and he discussed the traumatic events he had experienced in his past. AR 476–79.

Between August 3, 2015, and September 15, 2015, Lathon returned to Ms. Sapp for four subsequent evaluations. AR 479, 481–83. During these treatments, Ms. Sapp noted slight fluctuations in Lathon's mental state, and issued a Medical Source Statement opining that Lathon suffered from marked limitations in understanding and remembering short, simple instructions; understanding and remembering detailed instructions; carrying out detailed instructions; and the ability to make judgments in simple work-related decisions. AR 490–92. Ms. Sapp found Lathon to be moderately limited in his ability to carry out short, simple instructions, and extremely limited in his ability to respond appropriately to work pressures in a usual work setting, as well as markedly limited in his ability to interact appropriately with the public, supervisors, and coworkers, and respond appropriately to changes in a routine work setting. AR 490–91.

D.     **Records Produced to the SSA Appeals Council**

On October 21, 2015, and again on November 18, 2015, Lathon attended medication management appointments with Carol J. Wilson, CNS, APRN. AR 493–99. At these appointments, Lathon represented that his auditory hallucinations had not subsided, his concentration and appetite were poor, and that he was experiencing suicidal ideation. AR 494–95. Ms. Wilson found Lathon to be depressed, anxious, showing signs of psychosis, and having

5

poor attention and concentration. AR 495. At the November 18, 2015, appointment, Lathon stated that his symptoms had improved since starting new medications. AR 497. Ms. Wilson found Lathon's attention and concentration to be poor, and his memory intact. AR 498.

E.     **Hearing Testimony**

During the September 25, 2015, hearing, the ALJ posed a series of hypothetical questions to vocational expert ("VE") Robert Brezinski. AR 87. Brezinski testified that based on the limitations posed in the ALJ's hypotheticals, Lathon could secure and maintain competitive employment as a hand packager, stocker, and printed circuit board assembler. *Id.* The VE testified that these jobs are medium skilled and exist in significant numbers in the national economy. *Id.* In addition, a neutral medical expert, Dr. James Felling, testified at the hearing. AR 83. Dr. Felling opined that Lathon satisfies Listing criteria 12.04 and 12.06, and possibly Listing criteria 12.03, assuming the credibility of Lathon's representations regarding symptom severity. AR 84.

F.     **The Commissioner's Decision**

On December 1, 2015, the ALJ determined that Lathon was not entitled to SSI benefits. AR 26. In determining that Lathon was not disabled, the ALJ followed the five-step process outlined by 20 C.F.R. § 404.152(a)(4).

The first step in the sequential evaluation is to evaluate the claimant's work history to determine if they are engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.15071 and 416.971. If the claimant has performed substantial work activity then he is not disabled. *Id.* At step one, the ALJ found that Lathon had not engaged in substantial work activity since his alleged disability onset date. AR 31.

The second step in the sequential evaluation is to determine whether the claimant has a severe, medically-determinable impairment, or combination of impairments, that significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§ 404.1520(c) and 416.920(c). At step two, the ALJ found that Lathon had the following severe impairments: asthma, diabetes, and schizoaffective/affective disorder. AR 31.

The third step in the sequential evaluation requires the ALJ to determine whether the claimant has an impairment that meets or equals one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d), 404.1525, 404.1526. The ALJ determined that Lathon did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in Appendix 1. In making this determination, the ALJ found that Lathon's limitations fail to cause at least two marked limitations or one marked limitation and repeated episodes of decompensation, as required under Paragraph B of Listing criteria 12.04, 12.06, and 12.03. AR 34.

If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's Residual Function Capacity ("RFC"). *See* 20 C.F.R. § 416.920(e).

The ALJ concluded that Lathon had the RFC to:

> [perform no work in excess of the medium exertion level except]; never climbing ladders, ropes or scaffolds; avoid concentrated exposure to atmospheric conditions; no exposure to dangers to life or limb in the workplace; not required to work in high, exposed places. With regards to concentration, persistence, and pace, work is limited to simple, repetitive tasks; occasional changes in work setting; no interaction with the public is required to complete tasks; brief and superficial interaction with supervisors, co-workers; no complex decision-making. Additionally, no rapid paced work . . . .

AR 35.

In the fourth and fifth steps of the sequential evaluation process, the ALJ must determine whether the claimant has the RFC to perform either his past relevant work or any other jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v). If the claimant cannot perform his past relevant work, then the burden shifts to the Commissioner to establish, first, that the claimant has the RFC to perform other kinds of work, and, second, that other work exists in substantial numbers in the national economy. *See Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

At step four, the ALJ found that Lathon had no past relevant work. AR 40. At step five, the ALJ concluded that considering Lathon's age, education, work experience, and RFC, that Lathon could work as a hand packager, stocker, and printed circuit board assembler, and that these jobs exist in significant numbers in the national economy. *Id.* This determination was based on the VE's testimony, which the ALJ found consistent with the information contained in the Dictionary of Occupational Titles. AR 41.

### III. STANDARD OF REVIEW

Congress has prescribed the standards by which Social Security disability benefits may be awarded. "Disability" under the Social Security Act means "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is under a "disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel,* 158 F. 3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan,* 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan,* 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 220 (1938)). In determining whether the ALJ's decision is based on substantial evidence, the court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel,* 188 F.3d 1047, 1050 (8th Cir. 1999).

A court, however, may not reverse merely because substantial evidence would have supported the alternative decision. *See Roberts v. Apfel,* 222 F.3d 466, 468 (8th Cir. 2000). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Id.* (citing *Craig v. Apfel,* 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir. 1993)). Therefore, the Court's review of the ALJ's factual determinations is deferential and the evidence is neither reweighed, nor the factual record reviewed *de novo. See Flynn v. Chater,* 107 F. 3d 617, 620 (8th Cir. 1997); *Roe v. Chater,* 92 F.3d 672, 675 (8th Cir. 1996).

### IV. ANALYSIS

Lathon raises two global arguments: (1) that his impairments met the Listing 12.03, 12.04, and 12.06, criteria, *see* ECF No. 35 at 13–22; and (2) that the ALJ erred by finding that he had an RFC to perform work. *See id.* at 22. Central to Lathon's argument, is that the ALJ erred in

weighing his credibility. *See id.* at 5. The Commissioner argues that the ALJ's step-three finding was proper and substantial evidence supports the ALJ's RFC determination. *See generally* ECF No. 39. This Court agrees and affirms.

A. **Substantial Evidence in the Record as a Whole Supports the ALJ's Step-Three Determination**

Lathon challenges the ALJ's step-three determination, primarily, on the grounds that the ALJ impermissibly substituted his opinion for his treating providers' opinions and Dr. Felling's hearing testimony, and failed to recontact Dr. Felling to interpret the additional medical records he produced after the September 25, 2015, hearing. *See id.* at 13–22. To satisfy Listings 12.03, 12.04, and 12.06, Lathon must first satisfy the Paragraph A Listing criteria. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. If Lathon satisfies the Paragraph A criteria, he must then satisfy the Paragraph B or C criteria, which are the same for Listings 12.03, 12.04, and 12.06. *See id.* Here, Lathon only challenges the ALJ's Paragraph B determinations. *See* ECF No. 34 at 13–19.

To meet Paragraph B, Lathon must show extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentration, persistence, or maintaining pace; adapting or managing oneself. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1; s*ee, e.g., Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (holding that "the burden of proof is on the plaintiff to establish that his or her impairment meets or equals a listing."). Although the determination of whether Lathon's impairments meet or medically equal a listed impairment must be based on medical evidence, the decision itself is reserved to the ALJ. *See* 20 C.F.R. §§ 416.920(e)(4), 416.926(e), 416.1453, 4054.370.

Here, the ALJ found that Lathon suffered from only mild, not marked or extreme, daily living restrictions. AR 33. The ALJ based this determination on Lathon's testimony and his

demonstrated ability to care for, and groom, himself independently, prepare meals, clean, read, and visit with family members, which belied his alleged symptom severity. *Id.* Although Lathon argues generally that other evidence supports remanding this matter, this Court's review of the ALJ's factual determinations is deferential and it neither re-weighs the evidence, reviews the factual record *de novo*, nor reverses when an ALJ's decision falls within a reasonable "zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th. Cir. 2006). Here, that Lathon did not satisfy the Listing 12.03, 12.04, and 12.06, Paragraph B criteria is supported by substantial evidence in the record as a whole. *See Qualls*, 158 F. 3d at 427.

After reviewing the record, it appears to this Court that only Ms. Sapp and Dr. Wiger offered definitive opinions consistent with a disability finding at step-three under Listings 12.03, 12.04, and 12.06. Dr. Felling, the neutral medical expert, opined that Lathon was disabled under Listing 12.04 12.06, and possibly 12.03, but qualified that his opinion assumed Lathon's credibility regarding symptom severity. AR 84. Dr. Felling further opined that some of Lathon's allegations regarding symptom severity, namely his alleged hallucinations, were fairly recent in origin and were "questionable[,]" and that Lathon, based on his review of the record, was at times functioning well. AR 85. Further, Although Dr. Wamuo, Lathon's treating psychiatrist, opined that Lathon could not return to work in the foreseeable future, she did not elaborate as to whether foreseeable future meant that Lathon could not work for at least the requisite one year needed for a disability finding, *see Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), and she did not specifically consider the applicable SSA Listing criteria. AR 473. Conversely, the state medical and psychological consultants that the ALJ appears to rely on, Dr. Charles Grant and Dr. Cliff Phibbs, both concluded that Lathon did not satisfy any Listing criteria. *See* AR 98,

113. Dr. Phibbs specifically considered Listings 12.03, 12.04, and 12.06, and found that Lathon suffered from, at most, only moderate limitations.

"Substantial evidence is less than a preponderance . . . [and] means more than a mere scintilla." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). Here, in light of the whole record, the state medical and psychological consultants' opinions that Lathon did not satisfy any Listing criteria supplies more than a scintilla of evidence in support of the ALJ's decision. *See id.* Although this Court might well have decided the matter differently in light of the substantial evidence in support of a disability finding under Listings 12.03, 12.04, and 12.06 (Ms. Sapp, Dr. Wiger, Dr. Wamuo, and Dr. Felling's opinions), this Court's review is circumscribed and limited to the deferential question of whether substantial evidence in the record as a whole supported the ALJ's decision. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000). As the Eighth Circuit has repeatedly held, "[a]s long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468. Concluding that substantial evidence in the record as a whole supported the ALJ's Listing determination; this Court must affirm.

As to social functioning abilities, the ALJ determined that Lathon suffered from moderate difficulties. AR 33. Again, the ALJ's determination was supported by substantial evidence in the record as a whole, *see id.*, applying the governing criteria. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(C)(2). Since Lathon's amended onset disability date, his medical providers described him as pleasant and cooperative, and he and his fiancé regularly used public transportation. *See e.g., Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (holding that the fact an ALJ "did not elaborate on his conclusion does not require reversal, because the record

supports her overall conclusion."). This Court finds that the ALJ properly considered the medical evidence in the record as a whole, assessed the severity of Lathon's disorders, and determined that to the extent Lathon suffered limiting effects, those effects did not extinguish his ability to secure and maintain competitive employment.

Regarding concentration, persistence, or pace, the ALJ determined, again, that Lathon suffered only moderate difficulties. AR 33. Lathon attacks this determination, arguing that the ALJ erred by discounting Dr. Felling's hearing testimony that Lathon met Listings 12.04, 12.06, and possibly 12.03, and failed to recontact Dr. Felling to evaluate the additional evidence provided after the September 25, 2015, hearing. *See* ECF No. 34 at 13–22. Lathon maintains that SSA "'regulations provide that treating physicians or psychologists will be recontacted by the Commissioner when the medical evidence received from them is inadequate to determine a claimant's disability.'" ECF No. 35 at 14. (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing 20 C.F.R. § 416.912(e)).

However, the regulation Lathon relies on, 20 C.F.R. § 416.912(e), was rescinded effective March 26, 2012, for the express purpose of changing the "rules regarding when [the Commissioner] will [recontact the claimant's] medical source(s) to resolve an inconsistency or insufficiency in the evidence he or she provided." *See How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10651-01, 2011 WL 7404303 (Feb. 23, 2012). Under the revised regulations, an ALJ may recontact a medical source if there is insufficient evidence in the record to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520b(c)(1). Here, because there was sufficient evidence that Lathon was not disabled, and because recontacting Dr. Felling was within the discretion of the ALJ, Lathon's reliance on this regulation is misplaced. *See* 77 Fed. Reg. 10651-01, 2011 WL 7404303 (Feb. 23, 2012). Indeed, given that the ALJ concluded

the evidence in the record was not insufficient to render a disability finding, a remand for Dr. Felling's further consideration of the additional evidence is not appropriate here. Because Lathon is unable to meet his burden of proving the existence of Paragraph B criteria, the ALJ properly denied Lathon's application for SSI. *See* 20 C.F.R. Part 404, Subpart. P, Appendix 1.

**B.     Substantial Evidence in the Whole Record Supports the ALJ's RFC Determination**

In challenging the ALJ's RFC determination, Lathon first contends that the ALJ erred in weighing Ms. Sapp's opinion. *See* ECF No. 35 at 23. Specifically, Lathon points to Ms. Sapp's finding that he had marked and extreme mental functioning limitations. AR 490–921. When deciding the weight to give an opinion, an ALJ considers factors including: (1) the examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *See* 20 C.F.R. § 416.927(c).

Here, the ALJ properly considered Ms. Sapp's opinion and found it inconsistent with Lathon's global assessment of functioning scores indicating "moderate" symptomatology. AR 39. The ALJ also properly concluded that Ms. Sapp's opinion was not supported by the whole record because Lathon's medical providers routinely described his thought process, concentration, and memory as "normal." AR 452, 462, 468, 497. Moreover, the ALJ noted that Ms. Sapp's opinion failed to consider the positive impact consistent medication had on Lathon's symptoms. AR 38, 469. As such, the ALJ was entitled to discount Ms. Sapp's opinion. *See Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995).

Lathon next argues that the ALJ committed reversible error by discounting Lathon's examining medical sources in favor of the state medical consultants. *See* ECF No. 35 at 25. Generally, a "treating physician's opinion is entitled to controlling weight," so long as it is "supported by medically acceptable techniques and is not inconsistent with substantial evidence

in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016). The ALJ must "always give good reasons . . . for the weight [attributed to the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). An ALJ may give greater weight to a state agency consultant's opinion than a treating physician's opinion when a claimant's treating physicians' opinions are inconsistent with the record as a whole. *See, e.g.*, *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir. 2000) (holding that an ALJ "may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence.").

This Court concludes that the ALJ was entitled to discount the opinion of Dr. Wiger because it was inconsistent with his own statements concerning the results of Lathon's psychometric testing and, additionally, was inconsistent with the record as a whole because his assessment was made prior to Lathon beginning mental health treatment, which resulted in significant improvements. AR 39. The ALJ was also entitled to give little weight to Dr. Wamuo's opinion because her disability assessment was designed for determining Lathon's eligibility for Minnesota's cash assistance program, Supplemental Nutrition Assistance Program Employment and Training. *Id.* Moreover, Dr. Wamuo's assessment was made while Lathon was not taking medication proven to significantly improve his symptoms. *Id.*

Lathon next challenges the ALJ's credibility analysis, which discounted Lathon's subjective complaints of pain. *See* ECF No. 35 at 26. An ALJ must consider a claimant's subjective complaints within the context of their: (1) daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1321–22 (8th Cir. 1984). In evaluating subjective complaints, the ALJ

is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. *See id.* at 1322. "Subjective complaints may be discounted if they are inconsistent with the record as a whole." *Id.*

Here, the ALJ found that Lathon was not credible because he failed to consistently take his medications as prescribed. AR 38–39. The Eight Circuit has repeatedly held that failure to follow a recommended course of treatment weighs against a claimant's credibility. *See Guillaums v. Apfel*, 242 F.3d 793, 797 (8th Cir. 2001); *see also Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). Furthermore, that Lathon often was without insurance does not preclude the ALJ from factoring Lathon's failure to take recommended medication into his credibility assessment. *See, e.g., Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989) (holding that failing to follow a prescribed treatment plan, even in cases of financial hardship, is a credibility determination matter reserved to the ALJ).

While the ALJ did not expressly mention the *Polaski* factors in his credibility analysis, such specificity is not required. *See, e.g., Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (holding that "the ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered."). Here, Lathon's improvement in response to treatment and medication, and inconsistencies between subjective complaints and objective medical support the ALJ's decision to discount Lathon's credibility.

Fundamentally, an RFC determination requires "[s]ome medical evidence" in support. *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). The ALJ here opined that Lathon's daily activities belied his alleged symptom severity. *See* AR 39; *see, e.g., Hensley v. Barnhard*, 352 F.3d 353, 356–57 (8th Cir. 2003) (reasoning that the claimant's allegation of limited mobility was undermined by his admission to providing care for his children and disabled sister). The

16

record here shows that the ALJ's RFC determination included, at minimum, some medical evidence. Although the ALJ must not "succumb to the temptation to play doctor and make their own medical findings," *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009), in this case, Lathon does not argue that the ALJ went beyond the *presented* evidence to make independent factual findings. Because substantial evidence existed in the record as a whole, this Court will not disturb the ALJ's credibility determinations. *See, e.g., Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (reasoning that when "adequately explained and supported, credibility findings are for the ALJ to make[,]" rather than the reviewing court).

## V. CONCLUSION

Because the ALJ's decision was supported by substantial evidence in the record as a whole, this Court cannot reverse and remand simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently." *Roberts*, 222 F.3d at 468. Accordingly, the Commissioner's motion for summary judgment is granted.

## VI. ORDER

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 33) is **DENIED;**

2. Defendant's Motion for Summary Judgment (ECF No. 38) is **GRANTED;**

3. The Commissioner's decision is **AFFIRMED** and the case is **DISMISED WITH PREJUDICE. LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 29, 2018

FRANKLIN L. NOEL
United States Magistrate Judge